UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
 LILIT MURADYAN

                                Plaintiff,

    -against-


EQUIFAX INFORMATION SERVICES, LLC
TRANSUNION, LLC, EXPERIAN INFORMATION
SOLUTIONS, INC., GOLDMAN SACHS & CO LLC,
JPMORGAN CHASE FINANCIAL COMPANY LLC,
MERCEDES-BENZ FINANCIAL SERVICES USA LLC,
SELENE FINANCIAL, LP, CITIBANK, N.A.,
AMERICAN EXPRESS COMPANY,
BMW FINANCIAL SERVICES NA, LLC
TD BANK USA, N.A.



                                Defendants.

-----------------------------------------------------------

## COMPLAINT FOR VIOLATIONS OF THE FCRA

### *Introduction*

1.     Plaintiff Lilit Muradyan seeks redress for the illegal practices of Equifax Information Services, LLC ("Equifax"), TransUnion, LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), Goldman Sachs Bank USA ("Goldman"), JPMorgan Chase Financial Company LLC ("Chase"), Mercedes-Benz Financial Services USA LLC ("Mercedes"), Selene Financial, LP ("Selene"), Citibank, N.A. ("Citibank"), American Express Company ("AMEX"), BMW Financial Services NA, LLC ("BMW") and TD Bank, N.A. ("TD Bank")  in violation of the Fair Credit Reporting Act, 15. U.S.C. § 1681, et seq. (FCRA)

2. The FCRA prohibits furnishers of credit information for falsely and inaccurately report consumers' credit information to credit reporting agencies.

*Parties*

3. Plaintiff is a citizen of the State of New York who resides within this District.

4. Plaintiff is a consumer as defined by 15 U.S.C. § 1681a et. seq.

5. Defendant Equifax is a Credit Reporting Agency ("CRA") that engages in the business of maintaining and reporting consumer credit information.

6. Upon information and belief, Defendant Equifax's principal place of business is located in Atlanta, Georgia

7. Upon information and belief, Defendant TransUnion's principal place of business is located in Chicago, Illinois.

8. Upon information and belief, Defendant Experian's principal place of business is located in Costa Mesa, California.

9. Defendant Goldman is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

10. Upon information and belief, Goldman was incorporated in Delaware and accepts service of procsess at 200 West Street, New York, New York, 10282.

11. Defendant Chase is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

12. Upon information and belief, Chase was incorporated in Delaware and accepts service of procsess at 28 Liberty Street, New York, New York 10005.

13. Defendant Mercedes is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

14. Upon information and belief, Mercedes was incorporated in Delaware and accepts service of procsess at 28 Liberty Street, New York, New York 10005.

15. Defendant Selene is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

16. Upon information and belief, Selene was incorporated in Delaware and accepts service of procsess at 80 State Street, New York, New York 12207.

17. Defendant Citibank is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

18. Upon information and belief, Citibank is a national banking association and accepts service of procsess at the New York Secretary of State. Citibank's headquarters is located in this District.

19. Defendant AMEX is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

20. Upon information and belief, AMEX was incorporated in Delaware and accepts service of procsess at 28 Liberty Street, New York, New York 10005.

21. Defendant BMW is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

22. Upon information and belief, TD Bank is a national banking association and its principal place of business is located at 1701 70 Street, Cherry Hill, New Jersey 08034.

23. Defendant TD Bank is a "furnisher of information" within the meaning of the FCRA [15 U.S.C. § 1681s-2 et seq.].

24. Upon information and belief, BMW was incorporated in Delaware and accepts service of procsess at 28 Liberty Street, New York, New York 10005.

*Jurisdiction and Venue*

25. This court has jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

26. All conditions precedent to the bringing of this action have been performed.

27. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as some of the defendants have their headquarters in this District and many have a presence in this District.

*Allegations Particular to Lilit Moradyan*

28. Plaintiff is a consumer who is the victim of inaccurate reporting by Defendant CRAs and has suffered particularized and concrete harm.

29. Plaintiff disputed Defendant furnishers' accounts via letters dated May 18, 2023 with Defendant CRAs, namely TransUnion and Experian. However, Plaintiff did not dispute the TD Bank entry with TransUnion and Experian.

30. Plaintiff disputed the Selene entry with TransUnion and Experian on May 18, 2023.

31. Plaintiff disputed Defendants furnisher's account via a letter dated May 18, 2023 with Equifax, namely furnishers, Chase, Mercedes, Citibank, AMEX , BMW and TD Bank.

32. The Plaintiff wrote to the CRAs as follows via letter dated May 18, 2023 as follows: "I am disputing the account below because they are reporting with late payments. I was struck in Russia when the war started and they banks didn't allow me to login or make calls to make any payments on any of my accounts. Please remove the late payments showing on my accounts and send me an updated copy of my credit report by mail.

33. Upon information and belief, the CRAs sent the Plaintiff's disputes to all credit bureaus and issued credit reports whereby the late the payments remained on the reports.

34. 15 U.S.C. § 1681i provides the procedure by which a consumer reporting agency ("CRA") must abide whenever a consumer disputes an item contained in his or her credit file.

35. Section 1681i(a) outlines the investigation that the CRA must undertake after the consumer notifies the CRA of the dispute.

36. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." Cortez v. Trans Union, LLC, 617 F.3d 688, 706 (3d Cir. 2010).

37. Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit files and then notified CRAs of the said disputes.

38. Despite the disputes from the Plaintiff, the CRAs have completely abdicated their obligations under federal law and has instead chosen to merely "parrot" whatever their customers have chosen to say.[1]

39. Defendant furnishers have promised through their subscriber agreements or contracts to accurately update accounts but the furnishers have willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow this requirement as well as the

---

[1] Jones v. Experian Info. Solutions, Inc., 982 F. Supp. 2d 268, 274–74 (S.D.N.Y. 2013) (CRA's duties consist of more than forwarding dispute to the furnisher and relying on response, citing *Gorman v. Experian*; "Defendant's duty under the statute is not necessarily fulfilled merely by the furnisher for information"); Gorman v. Experian Info. Solutions, Inc., 2008 WL 4934047 (S.D.N.Y. Nov. 19, 2008) (FCRA demands more than forwarding the dispute to the furnisher and relying on the furnisher's response); Frost v. Experian, 1998 WL 765178 (S.D.N.Y. Nov. 2, 1998) (required to go behind the court record if notified that it is inaccurate)

requirements set forth under the FCRA and state law, which has resulted in the erroneous information on Plaintiff's credit reports.

40. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See Johnson v, MBNA America Bank, No. 03123S (February 11, 2004).

41. The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007). (To achieve this goal, it "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute."), Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1162 (9th Cir. 2009). (These duties are triggered whenever a credit reporting agency notifies the furnisher that a consumer has disputed information that it provided to the agency. Id.; 15 U.S.C. § 1681s-2(b) (1). Once this occurs, the furnisher must "conduct an investigation with respect to the disputed information," "review all relevant information provided by the consumer reporting agency" about the dispute, and correct any inaccuracies. Id.), see also Nelson v. Chase Manhattan Mortg. Corp., 282 F.3d 1057, 1059 (9th Cir. 2002). (Describing furnisher's duties under the FCRA). If the furnisher fails to carry out any of these duties, the consumer who initiated the dispute may sue the furnisher. 15 U.S.C. § 1681o; *Nelson*, 282 F.3d at 1059. See also Haynes v. Chase Bank U.S.A., N.A., Docket No. 7:18-cv-03307 (S.D.N.Y. Apr 16, 2018). ([The Judge]

conclude[s], therefore, based on the foregoing allegations in the complaint that the complaint, if true -- and I need to accept it as true -- states a cause of action against Chase for breach of the discharge under Sections 727 and 524(a)(2) of the Bankruptcy Code for intentionally assisting in the collection of discharged debt by not correcting the debtors' credit reports to reflect that the debt has, in fact, been discharged.), Venugopal v. Citibank, National Association, Docket No. 5:12-cv-02452 (N.D. Cal. May 14, 2012). (Construed in the light most favorable to Plaintiff, this report supports Plaintiff's claim that CrossCountry continued to misreport Plaintiff's debt history even after Plaintiff initiated his dispute with the CRAs. Accordingly, he has stated a valid claim under the FCRA.)

42. It is only after receiving the CRA's notice of the consumer's dispute that a furnisher can be liable to the consumer for its failure to participate in the investigation process as required by the statute. A failure of the CRA to forward the dispute to the furnisher relieves the furnisher of its obligation to investigate.

43. However, the furnisher that establishes this defense necessarily establishes the consumer's alternative claim that the CRAs breached their statutory duty to notify the furnisher.[2]

44. These litigation alternatives illustrate that whether the CRA or the furnisher (or both) is ultimately responsible for the failure to properly investigate the consumer's dispute is virtually impossible to know prior to formal discovery. Accordingly, the consumer is

---

[2] Snyder v. Nationstar Mortg. L.L.C., 2015 WL 7075622 (N.D. Cal. Nov. 13, 2015) (allegation of an inaccurate tradeline that the furnisher failed to correct or delete as part of the investigation process necessarily states a claim for a violation of that duty under § 1681s-2(b)(1)(E)); Abdelfattah v. Carrington Mortg. Serv. L.L.C., 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (complaint stated a claim for relief because it alleged a objectively false debt balance that failed to account for foreclosure sale proceeds, and thus showed that the furnisher "did not correct the report after notice and time to investigate)

well advised to join claims against both the furnisher and the CRAs when suing either for breaching its investigation duties. This proposition has been expressly endorsed by at least one federal court.

45. Any furnisher which negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000, for punitive damages, as well as for costs and attorney fees.

46. As in all FCRA cases, a necessary element of establishing furnisher liability is proof of damages—actual, statutory, or punitive. Thus, the consumer must either establish a willful violation permitting an award of statutory and punitive damages or have suffered damages in connection with a negligent violation. The FCRA is not a strict liability statute, so merely showing that the furnisher did not comply with one of its duties will not establish liability.

47. If the furnishers had performed a reasonable investigation of Plaintiff's disputes, Plaintiff's issue with the furnishers would not have appeared in the Plaintiff's reports.

48. Inaccurate information was included in the Plaintiff's credit reports.

49. The inaccuracy was due to the Defendants' failure to follow reasonable procedures to assure maximum possible accuracy.[3]

---

[3] Saindon v. Equifax Info. Serv., 608 F. Supp. 2d 1212, 1217 (N.D. Cal. 2009) ("In its motion and declarations, [Equifax] does lay out a string of application procedures that include both automated and manual checks by the agency. But giving all reasonable inferences to the plaintiff, the monitoring and reinvestigation procedures could be seen as quite limited. The procedures could be seen by a jury as merely basic automated checks that catch missing data fields on submitted forms, which do not go to the heart of whether a source of information is trustworthy. For example, when a consumer files a complaint contesting the accuracy of an item on his or her credit report, the sole action taken by Equifax is to contact the source of the information to verify if it is accurate. If the source says that it is, the inquiry ends . . . This does virtually nothing to determine the actual credibility of the source—which is what plaintiff asserts is lacking—or so a jury could reasonable conclude. While defendant does have some procedures that include a manual review of some disputes, a jury could reasonably find that almost none of

50. The Plaintiff suffered injury.

51. The consumer's injury was caused by the inclusion of the inaccurate entry.

52. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees, who were acting within the scope and course of their employment, and under the direct supervision and control of the Defendants herein.

53. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal law and the rights of the Plaintiff herein.

54. The violations brought forth herein began and occurred in or about the month of July, 2023 and is within the statute of limitations as defined in the FCRA, 15 U.S.C. § 1681p.

*Violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. 1681i et. seq.*

**Failure to Conduct Reasonable Investigation and Maintain Reasonable Accuracy**

55. At all times mentioned in this Complaint, the CRAs were "consumer reporting agenc[ies]," as referred to in 15 U.S.C. § 1681a(e).

56. At all times mentioned in this Complaint, the furnishers were furnishers of information as referred to in 15 U.S.C. § 1681s-2 of the FCRA.

57. Plaintiff disputed the matters with all CRAs as defined by 15 U.S.C. § 1681a of the FCRA.

58. Prior to the commencement of this action, Plaintiff disputed certain information about an various accounts on Plaintiff's CRAs' consumer credit reports.

---

the procedures include a review of the integrity of the information source itself. "), Sharf v. TransUnion, L.L.C., 2015 WL 6387501 (E.D. Mich. Oct. 22, 2015) (student loan servicer willfully violated FCRA by failing to conduct any investigation, deferring entirely to lender to determine accuracy), Saenz v. Trans Union, L.L.C., 2007 WL 2401745, at *7 (D. Or. Aug. 15, 2007) (when CRA is on notice that information is suspect, "it is not reasonable for the [CRA] simply to verify the creditor's position without additional investigation") White v. Trans Union, 462 F. Supp. 2d 1079 (C.D. Cal. 2006) (rejecting argument that confirmation of the accuracy of information from its original source is a reasonable inquiry as a matter of law)

59. Plaintiff was disputing the fact that Plaintiff was not late in payments despite her best efforts to make payments.

60. Defendants failed to act accordingly to protect the Plaintiff's rights.

61. The United States Court of Appeals for the Fourth Circuit held, that the FCRA requires furnishers to conduct detailed examinations of the documents underlying customer transactions before responding to inquiries about a customer's debt, instead of relying on computer databases that provide convenient, but potentially incomplete or inaccurate customer account information. See <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

62. Defendants' investigation process did not live up to the standards of <u>Johnson v, MBNA America Bank</u>, No. 03123S (February 11, 2004).

63. Defendants' investigation process did not live up to the standards of the Federal Trade Commission in the matter of <u>U.S. v. Performance Capital Mgmt.</u> (Bankr. C.D. Cal. Aug. 24, 2000).

64. Defendants violated the duty under 15 U.S.C. 1681i by verifying the above referenced the way the account was being reported.

65. Plaintiff's June 22, 2023 "Statement of Dispute" letters, sent in response to Defendant CRAs' reinvestigation results constitute a "statement of dispute" under 15 U.S.C. § 1681i(b).

66. The "Statement of Dispute" letters were sent after Plaintiff's request for a reinvestigation yielded no change in the status of the account on Plaintiff's credit reports. This is precisely the process that § 1681i requires.

67. Plaintiff clearly provided sufficient detail in her June 22, 2023 "Statement of Dispute"

letters to put the Defendants on notice as to the nature of the dispute that the report should be reflected accurately.

68. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner."[4]

69. Defendants violated § 1681i(c) of the FCRA, since Plaintiff disputed the accuracy of the above-mentioned information in Plaintiff's credit files and then notified the Defendants of the said dispute.

70. The Defendants' subsequent and respective reinvestigations of the item failed to resolve the dispute so the Plaintiff filed a statement of dispute with Defendants and Defendants failed to mark the debt as disputed and failed to include the statement of dispute in subsequent copies of the Plaintiff's CRAs' consumer reports.

71. Defendants have been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that they have disseminated to various persons and credit grantors, both known and unknown.

72. As an actual and proximate result of Defendants' acts and omissions, Plaintiff has suffered damages, including but not limited to, fear, stress, mental anguish, emotional stress, and acute embarrassment. In addition, Plaintiff suffered pecuniary loss for which she should be compensated in an amount to be proven by a jury at trial.

**LIABILITY AND DAMAGES**

73. Plaintiff re-states, re-alleges, and incorporates herein by reference, the previous paragraphs as if set forth fully in this cause of action.

---

[4] *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

74. At all times mentioned in this Complaint, various employees and/or agents of Defendants were acting as agents of Defendants and therefore Defendants were liable to for the acts committed by its agents and/or employees under the doctrine of respondent superior.

75. At all times mentioned in this Complaint, employees and/or agents of Defendants were acting jointly and in concert with Defendants, and Defendants are liable for the acts of such employees and/or agents under the theory of joint and several liability because Defendants and their agents or employees were engaged in a common business venture and were acting jointly and in concert.

76. Plaintiff believes and asserts that she is entitled to $1,000.00 as against each Defendant in statutory damages, pursuant to 15 U.S.C. § 1681 et. seq.

77. Plaintiff believes and asserts that Defendants' actions were willful and intentional.

78. Because Defendants' acts and omissions were done willfully, Plaintiff requests punitive damages.

79. Plaintiff requests punitive damages against Defendants in the amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n et. seq. and other portions of § 1681 et. seq.

80. For purposes of a default judgment, Plaintiff believes that the amount of such punitive damages should be no less than $9,000.00.

81. Plaintiff is also entitled to attorney fees pursuant to 15 U.S.C. § 1681 et. seq.

82. Plaintiff is entitled to any other relief that this Court deems appropriate and just under the circumstances.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in her favor and against the Defendants and award damages as

follows:

a) Actual damages pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

b) Punitive damages pursuant to 15 U.S.C. § 1681n;

c) Declaratory relief so that the credit reports are corrected accordingly;

d) Attorney's fees pursuant to 15 U.S.C. § 1681n or alternatively, 15 U.S.C. § 1681o;

e) Any other relief that this Court deems appropriate and just under the circumstances.

Dated: October 23, 2023

/s/ Adam J. Fishbein
Adam J. Fishbein, P.C. (AF-9508)
Attorney At Law
Attorney for the Plaintiffs
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiffs request trial by jury on all issues so triable.

/s/ Adam J. Fishbein
Adam J. Fishbein (AF-9508)